MLR/SC #114-21    11/20/20

STATE OF MAINE                          SUPERIOR COURT
AROOSTOOK, ss                           DOCKET NO. AROCD-CR-19-30469

need Atty
info

TERRY WILSON                    )
              Petitioner        )
David Paris for Pet.            )
                                )
vs                              )              DECISION
                                )
                                )
                                )
                                )
STATE OF MAINE                  )
              Respondent         )
James mitchell for State

BACKGROUND

Pending before the court is Terry Wilson's (hereafter Wilson) Petition for Post-Conviction Review. By a Complaint dated September 5, 2017, followed by an Indictment dated December 7, 2017, Wilson was charged with: Count 1-Aggravated Trafficking of Scheduled Drugs, Class A; Count 2-Violation of Condition of Release, Class E; and Count 3- Unlawful Trafficking in Scheduled Drugs, Class B. In September, 2017 Attorney Ward was assigned to represent Wilson. Attorney Ward represented Wilson through a series of dispositional conferences, the last one held in March, 2018. In April, 2018 Attorney Ward moved to withdraw and Attorney McIntosh was appointed and the case proceeded to docket call. Docket calls were held on May 14, 2018, June 29, 2018 and July 27, 2018. On August 6, 2018, a Rule 11 proceeding was conducted and Wilson plead guilty to all pending charges. The agreed upon sentence was: Count 1-10 years and $400 fine; Count 2-30 days concurrent; and Count 3- 8 years concurrent and $400 fine. The pleas were accepted and sentences imposed as presented.

1

On July 15, 2019 Wilson filed with the court the pending Petition for Post-Conviction Review alleging ineffective assistance of counsel. On October 15, 2019, Wilson's counsel filed an Amended Petition for Post-Conviction Review asserting ineffective assistance of counsel, including inadequate consultation, inaccurate advice, and failure to present character witnesses at sentencing.

Hearing on the petition was held on August 27, 2020. Testimony was received from Attorney McIntosh and Wilson. Also admitted in evidence were Petitioner's (labeled Defendant's) Exhibits 1, 2, 3, 4, and 5. (hereafter Def. Ex. __) Admitted over objection was State's Exhibit 1. Also, part of the record is the transcript of the Plea/Rule 11 proceeding (references to as Plea T. p. __, l.__) and the Docket Record. The court has also received and reviewed the transcript of the August 27, 2020 hearing (references to as T. p.__. L.__).

STANDARD OF REVIEW

Claims of ineffective assistance of counsel raised on post-conviction review are governed by the two -part test outlined in *Strickland v. Washington,* 466 U.S. 668 (1984). Applying that test, a petitioner bears the burden, at the post-conviction trial, of proving the following: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient representation resulted in prejudice. *Philbrook v. State,* 2017 ME 162, ¶ 6.

As to the first prong of the test, counsel's representation falls below the objective standard of reasonableness if it falls below what might be expected from an ordinary fallible attorney. *Philbrook,* ¶ 7. Judicial inquiry into the effectiveness is highly deferential, and the post-conviction court must make every effort to eliminate the distorting effects of hindsight. *Id.*

2

In *Roberts v. State of Maine*, 2014 ME 125, ¶23,103 A.3d 1031,1039, the Law Court indicated that in order to prove that counsel's performance was constitutionally deficient,

> "a defendant must show that counsel's representation fell below an objective standard of reasonableness. The question is whether the counsel's performance fell within the wide range of reasonable professional assistance that a competent criminal defense counsel could provide under prevailing professional norms. The *Strickland* test compels us to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time." (Internal citations and punctuation omitted.)

In the context of a plea the requirement of effective assistance of counsel is to ensure that the advice of counsel is within the realm of an ordinary competent attorney because the voluntariness of the plea hinges upon whether the advice is that of an ordinary competent attorney. *Aldus v. State,* 2000 ME 47, ¶15. The inquiry is whether the plea proceeding produced a just result which is "the knowing and voluntary entry of a guilty plea by a guilty party." *Id.*

As to the second prong, whether prejudice is established, a petitioner must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, meaning that the ineffective assistance of counsel rose to the level of compromising the reliability of the conviction and undermining confidence in it. *Philbrook,* ¶ 8; citing *Theriault v. State,* 2015 ME 137, ¶¶ 19, 25. A conviction may be unreliable and not worthy of confidence, thus satisfying the reasonable probability test, even without proof that a different outcome was "more likely than not", as the now superseded "outcome determinative" test would require. *Id.* The "reasonable probability" test is different from an "outcome-determinative" standard, which is the quantitative inquiry that would require proof "that counsel's deficient conduct more likely than not altered the outcome in the case." *Theriault,* ¶20. Rather, the court's analysis must be qualitative in nature-that is to determine whether the

3

petitioner has demonstrated that trial counsel's performance undermines confidence in the outcome of the case and renders that outcome unreliable. *Theriault,* ¶19. "..the result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Theriault,* ¶20, citing *Strickland,* 466 U.S., at 694.

FACTS

The assertions made by Wilson are Attorney McIntosh (hereafter "trial counsel") was ineffective by failing to provide to or review with Wilson all of the discovery, specifically CD's containing recordings, failing to file motions to suppress, failing to ascertain what co-defendant Robert Greig stated in a debrief with MDEA, and not negotiating a resolution different from the State's non-negotiable offer. Those assertions are countered by trial counsel's assertion it was Wilson's objective throughout his representation to plead guilty, and that he did not want a sentence that included probation.

To begin to assess Wilson's assertions, the court must first consider the basic facts of the charges as were generally disclosed in the paper discovery that trial counsel reviewed with Wilson. Those facts are:

> On September 4, 2017 Wilson was a passenger in a vehicle operated by a Robert Greig which was stopped by law enforcement in Monticello for speeding. During the stop the officer saw the passenger make furtive movements and appeared to be placing something on the rear driver's side floorboard. Although Wilson initially failed to give his correct name, the officer determined the passenger was Terry Wilson, and that extraditable arrest warrants were pending from another state. The officers placed Wilson under arrest, and then searched both Wilson and Greig's person, finding marijuana. The police then searched the vehicle and found a large amount of heroin, later tested as fentanyl, and

cocaine, on the rear driver's side floor board where Wilson was observed making furtive movements. Wilson refused to speak with police, but Greig did cooperate, and gave a statement to the officers indicating the drugs found were Wilson's and implicating him as the principle of drug trafficking activity. Wilson's and Greig's phones were also seized, and with search warrants attempted to search the phones and also obtained from them carrier texting data. In the paper discovery provided to Wilson were transcripts of text messages from Wilson's phone that Wilson acknowledges reviewing which implicate him in drug trafficking activity, or as Wilson testified, "were hurtful". See State's Ex. 1.

In addition to the paper discovery, the discovery provided to trial counsel included 8 CD's that contained 6.6 hours of electronic discovery. Def. Ex. 1.[1] The specific content of the electronic material was not revealed at hearing, other than the CD's contained recordings of body camera footage, photographs, and text messages. The record is clear that the material on the CD's was reviewed by trial counsel, and that trial counsel discussed the material with Wilson. (See T. p. 61, l. 10-13). But the CD's were not provided to or viewed by Wilson. However, there is no evidence on this record that any of the material in the CD's was exculpatory.

Wilson was charged with Class A Aggravating Trafficking. On January 28, 2018, while Wilson was still represented by Attorney Ward, Assistant District Attorney Kafferlin (hereafter "ADA") extended to Wilson a plea recommendation of 10 years in jail plus fines. (Def. Ex.3).[2] Trial counsel explained that this was the District Attorney's pre-debrief, non-negotiable offer. Trial counsel further explained the Aroostook County District Attorney's policy that for all felony level drug charges only a non-negotiable plea offer will be made unless and until the defendant debriefs with MDEA. The purpose of the debrief is to gather all intelligence the defendant may know about drug related activity, but defendants are immune from incriminating themselves to additional charges unless involving violent crimes. Trial counsel testified his experience with MDEA is they do not seek more details about the pending charges, but rather

---

Trial counsel testified it took 9 hours to review the CD's.
The evidence is inconclusive whether a split sentence with probation was ever made. (See T. p. 42, l. 13-18.)

seek broader intelligence of other drug activity. If a defendant successfully debriefs, the District Attorney will then negotiate a more lenient sentence. Trial counsel testified ADA Kafferlin strictly followed the debriefing policy. In this case, Wilson refused to debrief notwithstanding trial counsel explaining to him the policy and that the offer would not improve without debriefing.

Greig however did debrief. Although also initially charged with Class A Aggravated Trafficking, his case was resolved with pleas to a Class B Trafficking, and a split sentence of 7 years, all but 2 suspended, with probation. (See Def. Ex. 5). Trial counsel testified he did not attempt to ascertain what Greig disclosed to MDEA because based on his experiences MDEA only sought intelligence of other drug activity, and he already knew what Greig had told police regarding Wilson's principle complicity in the pending charges.

Over the course of his representation, trial counsel met with Wilson 17 times at the jail, plus additional times at court appearances. (See Def. Ex. 1) By the time trial counsel took over the representation, the non-negotiable plea offer had been made by the ADA. Generally, trial counsel understood Wilson wanted to plead. Wilson made it clear to trial counsel he was "not going to trial". (T. p. 17, l. 14-15; p. 63, l. 17-18) His directions were to negotiate a sentence without probation. (T. p. 17, l. 6-7; p. 24, l. 18) But Wilson was certainly unhappy with the ADA's offer of 10 years. Trial counsel explained to him the debriefing policy and that the ADA would not move off from 10 years without debriefing. None the less, trial counsel did speak, albeit unsuccessfully, with ADA Kafferlin several times in an effort to negotiate a better plea. (T. p. 47, l. 12-14;see also Def. Ex. 1). Trial counsel also spoke with Wilson about an open plea, which he did not recommend.

In addition to not liking the proposal of a 10 year sentence, the record suggests Wilson may have had difficulty understanding the process without having it explained to him several times. Wilson has limited education, a GED. Trial counsel met with Wilson 17 times, and had to repeatedly explain different aspects of the discovery and how it affected his case before Wilson understood. (See Def. Ex. 1, p. 4, Note).

Trial counsel's representation began with the case already at docket call, which were held in May, June, and July, 2018. Trial counsel explained that the discussions at each of those docket calls more resembled a dispositional conference. Through this period, trial counsel continued unsuccessful negotiations with the ADA, and explained to Wilson that as much as he too didn't agree with the ADA's position, the offer would not improve without debriefing. Because Wilson was hesitant to accept the 10 year offer, trial counsel initiated some preliminary trial preparation, but anticipated Wilson would eventually accept the offer. (See also Def. Ex. 1)

Ultimately, Wilson accepted the proposed 10 year sentence, and on August 6, 2018, he plead guilty at a Rule 11 proceeding and sentence was imposed as agreed. Having reviewed the entire transcript of that proceeding, the court remains satisfied that when Wilson plead, he made a knowing, willing and voluntary plea, he was pleading guilty because he was satisfied the State could prove his guilt, he acknowledged he was guilty, and understood the sentence to be imposed.

## DISCUSSION

*1. Did trial counsel's representation fall below an objective standard of reasonableness?*

As discussed, to prove that counsel's performance was constitutionally deficient,

> "a defendant must show that counsel's representation fell below an objective standard of reasonableness. The question is whether the counsel's performance fell within the wide

7

range of reasonable professional assistance that a competent criminal defense counsel could provide under prevailing professional norms. The *Strickland* test compels us to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time." (Internal citations and punctuation omitted.)

And in the context of a plea the requirement of effective assistance of counsel is to ensure that the advice of counsel is within the realm of an ordinary competent attorney because the voluntariness of the plea hinges upon whether the advice is that of an ordinary competent attorney. *Aldus v. State,* 2000 ME 47, ¶15. The inquiry is whether the plea proceeding produced a just result which is "the knowing and voluntary entry of a guilty plea by a guilty party." *Id.*

From both the Amended Petition and issues raised at hearing, the complaints Wilson makes of trial counsel fall into the following categories:

- failure to spend enough time him

-failure to file motions to suppress

-failure to ascertain what Greig stated in his debrief

-failure to provide to, or review with him, the material in the 8 CD"s

-failure to effectively negotiate a plea with a lesser sentence

-failure to properly counsel Wilson on a plea versus a trial.

To unravel this in the realm of what a reasonably competent attorney would do, from the perspective of trial counsel at the time, the court can make the following findings. First of all, this being a Class A Aggravated Trafficking charge, and without commenting whether the policy is fair, Wilson and trial counsel were stuck with the District Attorney's policy, which the ADA assigned to the case strictly followed, that only a non-negotiable offer would be extended unless the defendant debriefed. The court finds that Wilson made it clear he would not debrief; he did not want to be, in his words, "a rat". The court is entirely satisfied trial counsel adequately

8

explained to Wilson the policy and his limited options. The court also finds as fact that Wilson instructed trial counsel to negotiate a plea, he was not seeking a trial, but that he did not want a sentence including probation.

Without debriefing, if Wilson did not want to accept the 10 year offer, Wilson's remaining options were to plead open or proceed to trial. The court is again satisfied trial counsel adequately explained these options. Again, the court finds that Wilson told trial counsel his objective was to plead guilty, and that he wanted a sentence without probation.

Now, central to the decision of plea versus trial is what advice was given regarding the viability of any defenses if they proceeded to trial. This is related to Wilson's assertion that trial counsel should have filed motions. Although not directly asked at hearing, the court can infer trial counsel did not believe Wilson had a viable defense if the case went to trial. Trial counsel did state at the Rule 11 proceeding that if the matter went to trial he believed it was possible the State could prove his client's guilt. (Tr. p.21,l.10-13). As for filing a motion to suppress, based upon the facts discussed at this hearing, as well as those facts discussed at the Rule 11 proceeding, it is again inferred trial counsel did not file any motions because the search conducted of the vehicle was pursuant to the arrest of Wilson and finding drugs on Wilson's or Greig's person. Also, although Wilson did not review the recordings on the CD's, counsel discussed with him that content as well as the paper discovery Wilson had been provided, and determined the discovery matched what Wilson had told him.

Now the court appreciates that at a trial the State would have to prove that the drugs found were under Wilson's dominion and control, and/or prove his guilt either as a principle or an accomplice. Based upon the facts discussed at this hearing, coupled with the facts disclosed at the Rule 11, the court can discern no reason to second guess the assessment by trial counsel that

the State could prove Wilson's guilt. More importantly, the court finds from the testimony at hearing that Wilson wanted to resolve his case with a plea, he simply did not like the offer. There is nothing in the evidence to suggest Wilson was forced or cajoled to plead guilty, and nothing undermines the finding that the drugs were Wilson's and that he was guilty.

Back to the filing of a motion to suppress, the court agrees that even weak suppression arguments and unsuccessful motion hearings can be helpful, in some circumstances. It may influence the State to improve its offer, or could help counsel prepare for trial by getting a better look at the State's case. But this does not mean that motions must be filed in all cases. The court is satisfied with trial counsel's assessment that he did not identify any potential motions regarding the search of the vehicle. The court also notes that the time to file motions had expired prior to trial counsel's appointment.

As for not ascertaining what Greig told MDEA in the debrief, the court again agrees it may have been interesting to know what Greig disclosed. But trial counsel did know from the paper discovery what Greig had told the police when arrested. And even without knowing what Greig told MDEA, trial counsel still had the basic information that Greig cooperated and was given a more lenient sentence, by which he could impeach Greig if they went to trial. As for the debriefing process itself, and without the court commenting on its fairness, the court finds that trial counsel better than the court knows how these debriefings are conducted and what information is sought by MDEA. Reviewing this from the perspective of trial counsel, the court cannot find that trial counsel's performance fell below an objective standard of reasonableness by not ascertaining what was disclosed in the debrief.

As for the 8 CD's, certainly from a best practice's standpoint, they should have been reviewed with or by Wilson. The CD's were, however, reviewed by trial counsel, and he found

10

nothing that alerted him of possible defenses. And he did discuss the content of the CD's with Wilson. (T. p. 61, l. 10-13). And through this hearing, no possibly exculpatory evidence from the CD's has been identified. For example, the CDs supposedly contained footage of the officer's body cameras. This would potentially include the arrest and search. Trial counsel reviewed this material. The court is left to assume whether Wilson's petition counsel also reviewed the material. If we had a circumstance that trial counsel failed to review, or did review and failed to identify, material in the recordings that showed the search to be illegal, or other exculpatory evidence, then deficient performance would be present. But that is not what we have for evidence in this case. Trail counsel reviewed the material, and there is no suggestion on this record that he missed something exculpatory.

However, there were text messages in the CD's which apparently were copied and provided to Wilson. Those text messages, as Wilson testified, were harmful. Wilson having had the opportunity to review all of the material on the CD's would have been ideal. But the court again finds that trial counsel's decision not to review with Wilson the 6.6 hours of material, after reviewing the material himself and finding nothing exculpatory, and discussing it with Wilson, does not fall below an objective standard of reasonableness.

Finally, the record does not support the assertion that trial counsel failed to sufficiently meet with or consult Wilson, or explain to him the proceedings or options. Trial counsel met with Wilson 17 times, plus attended court. Apparently, Wilson required more time to acquire a sufficient understanding to make informed decisions. But the court finds on this record that trial counsel's time and effort with Wilson was sufficient and adequate to properly represent and counsel him such that Wilson could make a knowing, willing and voluntary plea.

In short, the court finds Wilson always wanted to plead guilty, but he did not want a sentence including probation. Trial counsel's assessment, which Wilson accepted, was there were no viable defenses, and the best option was to plead. That is what Wilson wanted to do. But Wilson did not want to debrief, and unfortunately was ensnarled in the District Attorney's debriefing policy. This was not trial counsel's fault or making, and remaining options such as trial or an open plea were not advisable under the facts.

The court finds that trial counsel's performance did not fall below an objective standard of reasonableness.

*2. Did trial counsel's performance undermine confidence in the outcome of the case and render it unreliable?*

As previously stated, whether prejudice is established, a petitioner must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, meaning that the ineffective assistance of counsel rose to the level of compromising the reliability of the conviction and undermining confidence in it. *Philbrook,* ¶ 8; citing *Theriault v. State,* 2015 ME 137, ¶¶ 19, 25. Assuming trial counsel's performance was deficient, for the reasons previously articulated, the court finds that reliability and confidence in the conviction was not undermined.

Again, because the charge was a Class A Aggravated Trafficking, Wilson faced the District Attorney's debrief policy. Trial counsel can only use his best efforts to persuade the State to make a better offer. And the court finds that trial counsel did continue to attempt to persuade the ADA to move. But in this case, Wilson not agreeable to debriefing, the ADA chose not to budge from his pre-debrief, non-negotiable offer. Wilson has not proven that there is

12

something trial counsel could have done to persuade the ADA to deviate from the District Attorney's longstanding policy. That left Wilson with two options- plead open or trail.

As previously stated, the court finds trial counsel properly advised Wilson about pleading open. And on the facts of this case, and it being a Class A charge, there is nothing in the evidence that undermines trial counsel's advice not to plead open.

As for trial, the court previously found that Wilson wanted to plead, and per the testimony of trial counsel, trial was not something Wilson actively sought. Rather, Wilson's objection and hesitancy to plead was related to the 10 year sentence. And considering the facts of the charges, as disclosed in this hearing and the Rule 11 proceedings, Wilson has not persuaded the court in any way, and certainly not to a reasonable probability, that this was a case that a defendant should chose trial versus a plea. A large amount of drugs, including heroin and cocaine, was found in the vehicle, in the location law enforcement saw Wilson make furtive movements. Text messages showed Wilson was actively engaged in drug sales. And Greig implicated Wilson as the principle. Whether guilty as a principle or as an accomplice, more important is the court's finding that Wilson wanted to plead, and he wanted a sentence without probation- he just was unhappy with the ADA's offer. The court does not find the plea of guilty unreliable or lacking confidence.

Similarly, as for not filing motions, Wilson has not persuaded the court that trial counsel missed a suppression issue. The facts disclosed at this hearing and at the Rule 11, and which were part of the paper discovery reviewed with Wilson, show that the search of the vehicle was pursuant to arrest and upon finding drugs on Wilson or Greig's person.

Wilson has failed to prove that there is a reasonable probability that trial counsel's performance affected the result such that the reliability of the conviction and confidence in it has been compromised.

In conclusion, the order of the court is: Petitioner Terry Wilson's Petition for Post-Conviction Review is DENIED.

Dated: _November 2, 2020_

_____

Justice, Superior Court